IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VANG CHANTHAVONG,                      )
                                       )    2:10-cv-2269-GEB-JFM
                Plaintiff,             )
                                       )
           v.                          )    ORDER GRANTING IN PART AND
                                       )    DENYING IN PART DEFENDANTS'
AURORA LOAN SERVICES, INC., a          )    MOTION TO DISMISS**
Delaware Corporation; MORTGAGE         )
ELECTRONIC REGISTRATION SYSTEMS,       )
INC.; and DOES 1-100, inclusive,       )
                                       )
                Defendants.*           )
_____)

       Defendants Aurora Loan Services, LLC ("Aurora"), Aurora Bank,

FSB ("Aurora Bank"), and Mortgage Electronic Registration Systems, Inc.

("MERS"; Aurora and MERS are collectively referenced as "Defendants")

seek dismissal of Plaintiff Van Chanthavong's First Amended Complaint

("FAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing

that it fails to state a claim. Defendants also move for an order under

Rule 12(f) that would strike Plaintiff's request for punitive damages.

Plaintiff opposes the motions.

---

       *      The caption has been amended pursuant to the Order of
Dismissal, filed February 22, 2011, dismissing defendant California
Western Reconveyance Corporation, a California Corporation.

       **     This matter is deemed suitable for decision without oral
argument. E.D. Cal. R. 230(g).

1      Defendants argue that Aurora Bank should be dismissed because

2  none of Plaintiff's claims in his FAC are alleged against Aurora Bank.

3  (Mot. to Dismiss ("Mot.") 1:26-27.) Defendants argue that Plaintiff's

4  original Complaint named Lehman Brothers Bank, FSB ("Lehman Brothers")

5  as a party, which is now Aurora Bank. Id. 1:24-25. None of Plaintiff's

6  claims are alleged against Aurora Bank or Lehman Brothers. Therefore,

7  Aurora Bank and Lehman Brothers are not parties in this action.

8

9  <center>**I. LEGAL STANDARD**</center>

10      To avoid dismissal under Rule 12(b)(6), a plaintiff must

11  allege "enough facts to state a claim to relief that is plausible on its

12  face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A

13  claim has facial plausibility when the plaintiff pleads factual content

14  that allows the court to draw the reasonable inference that the

15  defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ---

16  U.S. ----, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is

17  not akin to a 'probability requirement,' but it asks for more than a

18  sheer possibility that a defendant has acted unlawfully." Moss v. United

19  States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal,

20  129 S. Ct. at 1951).

21      In analyzing whether a claim has facial plausibility, "[w]e

22  accept as true all well-pleaded allegations of material fact, and

23  construe them in the light most favorable to the non-moving party."

24  Daniels-Hall v. Nat'l Educ. Ass'n, --- F.3d ----, 2010 WL 5141247, at *3

25  (9th Cir. 2010). However, "the tenet that a court must accept as true

26  all of the allegations contained in a complaint is inapplicable to legal

27  conclusions." Iqbal, 129 S. Ct. at 1949. "A pleading that offers 'labels

28  and conclusions' or 'a formulaic recitation of the elements of a cause

<center>2</center>

1 of action will not do.' Nor does a complaint suffice if it tenders
2 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.
3 (quoting Twombly, 550 U.S. at 555, 557).

4         "In sum, for a complaint to survive a motion to dismiss, the
5 non-conclusory 'factual content,' and reasonable inferences from that
6 content, must be plausibly suggestive of a claim entitling the plaintiff
7 to relief." Moss, 572 F.3d at 969 (quoting Twombly, 550 U.S. at 557).

8

9                    **II. REQUEST FOR JUDICIAL NOTICE**

10        Defendants request judicial notice of the following:
11 1)"Findings of Fact and Conclusions of Law for Order Denying Motion to
12 Reopen Chapter 7 Case", filed by the Bankruptcy Court of the Eastern
13 District of California's on March 1, 2010; 2) Plaintiff's Chapter 7
14 Voluntary Petition, filed on April 21, 2009; and 3) documents relating
15 to Lehman Brothers subsidiaries and its name change. (Request for
16 Judicial Notice ("RJN") 2:6-3:7, Exs. 1-3.) Plaintiff does not oppose
17 this request.

18        "As a general rule, a district court may not consider any
19 material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee
20 v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal
21 quotation marks omitted). However, a court may consider matters properly
22 subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th
23 Cir. 2007). A matter may be judicially noticed if it is either
24 "generally known within the territorial jurisdiction of the trial court"
25 or "capable of accurate and ready determination by resort to sources
26 whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

27        "Materials from a proceeding in another tribunal are
28 appropriate for judicial notice." Biggs v. Terhune, 334 F.3d 910, 915

n.3 (9th Cir. 2003). "[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss." <u>In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996) (collecting cases), <u>rev'd on other grounds by</u> <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). Defendants' request that the "Findings of Fact and Conclusions of Law for Order Denying Motion to Reopen Chapter 7 Case" and Plaintiff's Chapter 7 Voluntary Petition be judicially noticed is granted since these documents are matters of public record. <u>See</u> <u>Pritinik v. Comerica Bank</u>, No. C 09-03303 JF (RS), 2009 WL 3857455, at *3 (N.D. Cal. Nov. 17, 2009) (taking judicial notice of bankruptcy filings); <u>Rosal v. First Federal Bank of California</u>, 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (taking judicial notice of bankruptcy court filings in support of motion to dismiss under Rule 12(b)(6)); <u>Cobb v. Aurora Loan Services, LLC</u>, 408 B.R. 351, 354 (E.D. Cal. 2009) (considering plaintiff's bankruptcy filings in deciding defendant's motion to dismiss).

Defendants also request that judicial notice be taken of documents concerning Lehman Brothers and Aurora Bank, but this request is denied since Lehman Brothers and Aurora Bank are not parties in this action.

### III. PLAINTIFF'S ALLEGATIONS

On August 24, 2007 Plaintiff and Lehman Brothers "entered into a loan agreement for the refinancing of" Plaintiff's real property located at 1900 H Street, Sacramento, California (the "Property"). (FAC ¶¶ 1, 6.) Plaintiff executed an adjustable rate note (the "Note") and a

deed of trust (the "Deed"). Id. Exs. A-B. The Deed lists Lehman Brothers as the lender and MERS "as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." Id. Ex. B. Plaintiff "default[ed] under the terms of the Note." Id. ¶ 12. Plaintiff alleges that on August 15, 2008, a Notice of Default was recorded that listed MERS as the contact to "find out the amount you must pay, or to arrange for payment to stop the foreclosure[.]" Id. Ex. C. Plaintiff also alleges that on October 16, 2008, MERS recorded a substitution of trustee in which MERS is the "'nominee for LEHMAN BROTHERS BANK, FSB,' . . . the original beneficiary." Id. ¶ 14. Plaintiff alleges "[u]pon information and belief, MERS is not, and never has been in possession of the Note[.]" Id. ¶ 15.

Plaintiff filed for bankruptcy protection in the Eastern District of California on April 21, 2009. Id. ¶ 20. Plaintiff alleges Defendants violated the automatic stay on April 24, 2009 by causing "to be published a Notice of Trustee's sale, and posted it" at the Property. Id. ¶ 21. Aurora filed a motion for relief from the automatic bankruptcy stay on June 3, 2009, that would allow it to enforce its lien against the Property. (RJN Ex. 1.) The Bankruptcy Court granted the relief motion by terminating the stay on July 30, 2009. Id. MERS, as nominee for Lehman Brothers, transferred all beneficial interest under the Deed to Aurora on June 8, 2009. (FAC Ex. E.) Plaintiff alleges that "[t]his [transfer] action was void because it violated the automatic stay" and "[t]here is no endorsement or allonge evidencing that LEHMAN BROTHERS, MERS, or AURORA LOAN SERVICES is or was the holder of the note." Id. ¶¶ 22-23.

Plaintiff's bankruptcy case was closed August 14, 2009, and the Order Discharging the Debtors was entered on August 30, 2009. (Id.

5

¶ 25; RJN Ex. 1.) "Plaintiff alleges that since there is no evidence that LEHMAN BROTHERS, MERS, nor AURORA ever took actual possession of the note, its security interest was never perfected, [and was] not perfected at the time of filing the debtor's bankruptcy, and thus the underlying debt was discharged[.]" (FAC ¶ 26.)

Plaintiff alleges that both before and after the bankruptcy filing, "Plaintiff's agent, Boomie Cotton, and AURORA Loan Services had engaged in discussions of loan modification." Id. ¶ 27. Plaintiff further alleges: "On September 7, 2009, plaintiff's agent contacted AURORA and was advised that the payment could not be made and was told that they would give a 10 day grace period. Payment was sent and payment was received and credited to plaintiff's account on or about September 24, 2009." Id. ¶ 29. "On September 11, 2009, Defendants caused to be published a Notice of Trustee's Sale set for September 30, 2009." Id. ¶ 30; Ex. G. Plaintiff alleges he was unaware that a Notice of Trustee's Sale had been filed and never received notice. Id. ¶ 31.

Plaintiff received a Special Forbearance Agreement from Aurora dated August 28, 2009; which he signed on September 21, 2009. Id. 4:19-23, 5:5-7; Exs. F, H. He faxed that agreement to Aurora but he "never received [a] signed copy of the Agreement back from AURORA." Id. 4:22-23. Plaintiff alleges his agent contacted Aurora on September 24, 2009, to clarify the agreement "and was told the agreement was a six month trial period[.]" Id. ¶ 33. "[P]laintiff's agent was told by representatives of AURORA that there was no sale date and that the property was not in foreclosure, but that the property was in an 'active loan mod.'" Id. 5:13-15. "Plaintiff's Agent contacted AURORA on a monthly basis and was repeatedly told that there was no foreclosure date set[.]" Id. 5:16-17.

Plaintiff alleges his agent mailed Plaintiff's October payment to Aurora on October 19, 2009, and again asked "if there was a sale date[; the agent] was told the loan was not in foreclosure and there was no sale date." Id. ¶ 38. Plaintiff alleges: "On or about October 30, 2009, defendants conducted a private foreclosure sale without notice to plaintiff or his agent of any default in the loan modification agreement." Id. ¶ 39. Plaintiff alleges the Notice of Trustee's Sale was never posted on the premises, mailed by certified mail, or received by the Plaintiff. Id. ¶¶ 40-41.

Plaintiff alleges he was advised that the Property was for sale on November 2, 2009, when a real estate agent came to the Property. Id. ¶ 44. Plaintiff alleges the same day "plaintiff's agent spoke with defendant AURORA and asked when the loan modification/forbearance agreement was canceled, and was told that it was canceled on October 20, 2009. Plaintiff [alleges he] never received a notice of cancellation." Id. ¶ 46. Plaintiff alleges on November 3, 2009, his "agent contacted the foreclosure trustee and discovered for the first time that the trustee's sale had been continued from month to month and also learned for the first time that a new notice of trustee's sale had been published and a new sale date set for October 30, 2009. AURORA advised that . . . the property was sold on October 30, 2009." Id. ¶ 52. "[P]laintiff's agent . . . discovered that sales dates had been set on 2/2/09, 3[/]4/09, 5/12/09, 9/12/09, 7/15/0[9][,] 8/18/09[,] 9/30/09[,] and 10/30/09." Id. ¶ 48. Plaintiff alleges that he, "and his agent or representative had repeated and numerous conversations with the loan servicing agent and was told there was no sale date set." Id. ¶ 54.

Plaintiff filed a motion to reopen his bankruptcy case on January 21, 2010. (RJN Ex. 1.) The bankruptcy trustee "was advised of

1 the possible claim of the estate and the matter was continued to allow

2 the Trustee an opportunity to review the complaint and advise the court

3 whether he wished to pursue the claim on behalf of the estate." (FAC ¶

4 60.) The Bankruptcy Court did not reopen the case. (RJN Ex. 1.)

5 Plaintiff alleges that, "[a]s a result, the 'asset' was effectively

6 abandoned back to the debtor by operation of law[.]" (FAC ¶ 61.)

7

8 **IV. DISCUSSION**

9 Defendants seeks dismissal of Plaintiff's claims arguing inter

10 alia: "Plaintiff lacks standing to assert any claims because he failed

11 to include those claims as assets of his estate in his Chapter 7

12 Petition" and "each of Plaintiff's purported claims fails because they

13 do not meet the pleading requirements." (Mot. 1:16-22.) Plaintiff

14 alleges eight claims in his FAC which are titled: 1) injunctive relief,

15 2) declaratory relief, 3) breach of contract, 4) negligence/negligent

16 misrepresentation, 5) demand to produce the note, 6) to set aside the

17 trustee's sale, 7) violation of statute, and 8) fraud and deceit. (FAC

18 8:15-23:5.) However, three of Plaintiff's claims comprise more than a

19 single claim.

20 **A. Standing**

21 Defendants argue "Plaintiff does not have standing to

22 prosecute this action because all of the claims asserted by Plaintiff

23 remain part of his bankruptcy estate." (Mot. 5:4-5.) Plaintiff counters

24 that "[w]hile it is true that [he] did not list any claim against AURORA

25 in the Bankruptcy proceeding, the cause of action was not discovered

26 until after the case was . . . [closed]." (Opp'n to Mot. to Dismiss

27 ("Opp'n") 6:14-15.)

28

1    "Every action [must] be prosecuted in the name of the real

2    party in interest." Fed. R. Civ. P. 17(a). "Because the bankruptcy

3    trustee controls the bankruptcy estate, it is the real party in interest

4    in the [claims] that belong to the estate." Griffin v. Allstate Ins.

5    Co., 920 F. Supp. 127, 130 (C.D. Cal. 1996).

6         The filing of a bankruptcy petition "creates an estate [which]

7    is comprised of . . . all legal or equitable interests of the debtor in

8    property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "11

9    U.S.C. § 541(a)(1) . . . defines property of the bankruptcy estate to

10   include 'all legal or equitable interests of the debtor in property as

11   of the commencement of the case.' The scope of section 541 is broad, and

12   includes causes of action." Sierra Switchboard Co. v. Westinghouse Elec.

13   Corp., 789 F.2d 705, 707 (9th Cir. 1986). "11 U.S.C. § 521(1) [of the

14   bankruptcy code] provides that, '[t]he debtor shall file a list of

15   creditors, and unless the court orders otherwise, a schedule of assets

16   and liabilities, a schedule of current income and current expenditures,

17   and a statement of the debtor's financial affairs.'" Hamilton v. State

18   Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001).

19        "[A] debtor who fail[s] to disclose a pending claim as an

20   asset in a bankruptcy proceeding where debts were permanently discharged

21   [is] estopped from pursuing such claim in a subsequent proceeding." Id.

22   Further "[t]he debtor's duty to disclose potential claims as assets does

23   not end when the debtor files schedules, but instead continues for the

24   duration of the bankruptcy proceeding." Id. at 784-85. "If [the debtor]

25   fail[s] to properly schedule an asset, including a cause of action, that

26   asset continues to belong to the bankruptcy estate and does not revert

27   to [the debtor]." Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001)

28   (citing Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526

9

1 (8th Cir. 1991) (property is not abandoned by operation of law unless
2 the debtor "formally schedule[s] the property before the close of the
3 case")).

4       Plaintiff did not list any claim sub judice in his bankruptcy
5 filing. (RJN Ex. 2.) "Generally, a debtor has no duty to schedule a
6 cause of action that did not accrue prior to bankruptcy." Cusano, 264
7 F.3d at 947. "To determine when a cause of action accrues, we look to
8 state law." Id. at 947. A claim accrues when an "action could have been
9 brought[.]" Id. Under California law, a claim accrues when a "wrongful
10 act is done and the obligation or the liability arises[.]" Howard Jarvis
11 Taxpayers Ass'n v. City of La Habra, 25 Cal. 4th 809, 815 (2001).

12       Defendants argue Plaintiff lacks standing to maintain this
13 action because his claims arise out of the Notice of Default, which was
14 filed on August 15, 2008, before Plaintiff filed his bankruptcy petition
15 on April 21, 2009. (Reply in Supp. of Mot. to Dismiss ("Reply") 2:15-
16 19.) Plaintiff counters that his unsuccessful attempt to reopen his
17 bankruptcy case resulted in the "trustee effectively abandon[ing] the
18 [unscheduled] asset[s] back to [him]." (Opp'n 6:22-23.)

19       A bankruptcy trustee may abandon assets; however, property
20 that is not abandoned or administered by the trustee remains property of
21 the estate. 11 U.S.C. §§ 554 (a), (d). "'Abandonment' is a term of art
22 with special meaning in the bankruptcy context. It is the formal
23 relinquishment of the property at issue from the bankruptcy estate."
24 Catalano v. C.I.R., 279 F.3d 682, 685 (9th Cir. 2002). "In short,
25 [a]bandonment requires formal notice and a hearing." Id. at 686
26 (internal quotation marks omitted). The Bankruptcy Court's Order denying
27 Plaintiff's motion to reopen his bankruptcy case did not state any
28 property was abandoned by the trustee. (RJN Ex. 1.) Therefore, any claim

that accrued prior to the close of Plaintiff's bankruptcy case remains in the bankruptcy estate.

## B. Breach of Contract

Defendants argue Plaintiff lacks standing to pursue his breach of contract claim, which is based on the Special Forbearance Agreement. (Mot. 5:4-5.) Plaintiff alleges in this claim that Defendants breached the agreement as follows: failing to give proper notice of the Trustees Sale; failing to give Plaintiff notice of his "options for relief" under state and federal law; misrepresenting to Plaintiff that no Trustees Sale date had been set; failing to apply Plaintiff's tendered payment; and by conducting a foreclosure sale without notice. (FAC 11:17-12:1.) Plaintiff's bankruptcy case was closed August 14, 2010. (RJN Ex. 1.) Plaintiff alleges Aurora sent Plaintiff the Special Forbearance Agreement on August 18, 2009, and Plaintiff signed and returned it on September 21, 2009. (FAC ¶¶ 28, 32.) Therefore, this portion of Defendants' motion is denied since they have not shown that this breach of contract claim accrued prior to the close of Plaintiff's bankruptcy case.

Defendants also seek dismissal of this claim, arguing since the Special Forbearance Agreement is only signed by Plaintiff the statute of frauds precludes it from being enforceable against them. (Mot. 13:18-19.) Plaintiff responds the agreement is enforceable through promissory estoppel. (Opp'n 10:12.) Plaintiff contends since he made payments in reliance on the Special Forbearance Agreement, and Defendants accepted those payments, Defendants are estopped from denying the agreement's existence. Id. 10:17-21.

"[A]n agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an

1   interest in real property comes within the statute of frauds." <u>Secrest</u>

2   <u>v. Sec. Nat'l Mortg. Loan Trust 2002-2</u>, 167 Cal. App. 4th 544, 553-54

3   (2008) (holding an unsigned forbearance agreement violated the statute

4   of frauds since it attempted to modify a promissory note and deed of

5   trust, which are subject to the statute of frauds). Therefore, the

6   Special Forbearance Agreement comes within the statute of frauds since

7   it modifies the Note and the Deed. Further, the "payment of money alone

8   is not enough as a matter of law to take an agreement out of the statute

9   of frauds." <u>Id.</u> at 548. Since Defendants did not sign the Special

10  Forbearance Agreement as required by the statute of frauds, and payment

11  of money does not exempt the agreement from the statute of frauds,

12  Plaintiff has not plead an enforceable contract claim. Therefore,

13  Plaintiff's breach of contract claim is dismissed.

14              **C. Negligence/Negligent Misrepresentation**

15          Defendants also argue Plaintiff lacks standing to pursue his

16  negligence and negligent misrepresentation claims. (Mot. 5:4-5.)

17  Plaintiff alleges in his negligence and negligent misrepresentation

18  claims that "Defendants and each of them owed [him] and [his] agents a

19  duty to reasonable care in delivering, conveying and disclosing accurate

20  information about the loan and status" as follows:

21              AURORAS actions centered around a loan
                modification/special forbearance agreement, and advising
22              plaintiff of the status of the foreclosure proceedings.
                In communicating with Plaintiff, plaintiff was certain to
23              incur foreseeable harm as he was relying on the
                representatives regarding the status of the Loan
24              Modification; Special Forbearance Agreement, and status
                of foreclosure proceedings and trustee's sale. . . .
25              Aurora's action went beyond the scope of originating the
                loan but extended to offering and 'negotiating' the terms
26              of the Special Forbearance Agreement, and further
                undertook the duty of advising plaintiff and his agent
27              regarding the status of the Trustee's sale. Defendants,
                by agreement, their action and representations, assumed
28              a duty of care in advising plaintiff regarding the status
                of the trustee's sale and terms of the agreement.

Id. ¶¶ 89-90, 92. Since Plaintiff's negligence and negligent misrepresentation allegations concern what occurred after the close of Plaintiff's bankruptcy case, Defendants have not shown that Plaintiff lacks standing to pursue these claims.

Defendants also argue Plaintiff's negligence claim should be dismissed because Defendants did not owe Plaintiff a duty of care. (Mot. 15:4.) Defendants argue they do "not owe a borrower a duty of care for [their] routine involvement in a loan transaction." (Mot. 15:17-18.) Plaintiff counters that Defendants' conduct went "beyond the scope of the role of a loan originator and was actively involved in negotiating and implement[ing] a modification/forbearance agreement." (Opp'n 14:5-6.)

"[A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991). However, Plaintiff's allegations do not plausibly suggest that the Defendants "actively participate[d] in the financed enterprise beyond the domain of the usual money lender." Nymark, 231 Cal. App. 3d at 1096. Therefore, Plaintiff's negligence claim is dismissed.

Defendants also argue Plaintiff's negligent misrepresentation claim should be dismissed since Plaintiff fails to allege "facts which 'show how, when, where, to whom, and by what means the representations were tendered' as [he is] required to do[.]" (Mot. 16:22-24). The elements of a fraud claim under California law are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (E) resulting damage."

13

1  *Engall v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997)

2  (internal quotation marks omitted). "The same elements comprise a cause

3  of action for negligent misrepresentation, except there is not

4  requirement of intent to induce reliance." *Caldo v. Owens-Illinois,*

5  *Inc.*, 125 Cal. App. 4th 513, 519 (2004). Plaintiff alleges "Aurora

6  affirmatively misled [him] and his agent by informing them that the

7  status of the account 'was in loan modification' and further

8  specifically advising that no sale date had been set[.]" (FAC 14:18-19.)

9        A fraud claim plead in federal court must satisfy Rule 9(b)'s

10 heightened pleading requirements. See *Vess v. Ciba-Geigy Corp. USA*, 317

11 F. 3d 1097, 1103 (9th Cir. 2003). This rule provides that "[i]n alleging

12 fraud or mistake, a party must state with particularity the

13 circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Rule

14 9(b) requires that fraud claims be "accompanied by 'the who, what, when,

15 where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*,

16 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106).

17 The same 9(b) heightened pleading requirement applies to Plaintiff's

18 negligent misrepresentation claim since his claim is "grounded in

19 fraud[.]" *Id.* at 1125.

20       Plaintiff's allegations in his negligent misrepresentation

21 claim do not provide the specificity required by Rule 9(b), since

22 Plaintiff has failed to allege the "time, place, and specific content of

23 the false representations as well as the identities of the parties to

24 the misrepresentations." *Swartz v. KPMG LLP*, 476 F. 3d 756, 764 (9th

25 Cir. 2004)). Therefore, Plaintiff's negligent misrepresentation claim is

26 dismissed.

27 *///*

28 *///*

14

## D. **Demand to Produce the Note**

Defendants also challenge Plaintiff's standing to pursue his his "Demand to Produce the Note" claim. (Mot. 5:4-5.) Plaintiff alleges in this claim:

> there is no evidence that LEHMAN BROTHERS took possession of the note and perfected its security interest. There is no valid assignment of LEHMAN BROTHERS's interest in either the note or the Deed of Trust to MERS. Similarly, there is no evidence of a valid assignment of the note or the deed of trust from MERS to AURORA.

(FAC ¶ 98.) "Plaintiff [also] alleges that the actions of defendants in foreclosing on the property were void as a result of failure to perfect their security interest in the note and to demonstrate ownership of the note at the time various actions were taken." Id. ¶ 99. "Plaintiff [further] alleges that defendants do not have possession of the note and have no legal right to conduct legal action to foreclose on the note." Id. ¶ 105. Plaintiff also alleges "the authority of the beneficiary as the legal holder of the interest in the note is in dispute." Id. ¶ 106.

The allegation that Defendants are not the holders or beneficiaries of the note, and thus could not foreclose on Plaintiff's property, accrued when the Notice of Default was recorded on August 15, 2008. (FAC Ex. C.) When MERS, as beneficiary, recorded the Notice of Default, an "action could have been brought" to challenge the foreclosure proceedings which were being initiated by MERS. Cusano, 264 F.3d at 947. Therefore, Plaintiff's "Demand to Produce the Note" claim accrued prior to the close of Plaintiff's bankruptcy and should have been listed in Plaintiff's bankruptcy estate. Since this claim remains in the bankruptcy estate and Plaintiff does not have standing to pursue this claim. Therefore, Defendants' motion to dismiss this claim is granted.

///

### E. To Set Aside the Trustee's Sale

Defendants also argue Plaintiff lacks standing to pursue his claim in which he seeks to set aside the Trustee's Sale. (Mot. 5:4-5.) Plaintiff alleges in this claim "that at the time the Notice of Default was recorded, neither LEHMAN BROTHERS, MERS, nor AURORA CAL WESTERN RECONVEYANCE had possession of the note and thus had no standing or authority to initiate foreclosure proceedings on the deed of trust, rendering the Notice of Default Void"; and, that "defendants failed to comply with Civil Code 2924f and failed to provide written notice of the trustee's sale or post said notice on the property." (FAC ¶¶ 108-109.) Since Defendants have not shown that accrual of this claim occurred before the foreclosure sale was consummated, Defendants have not established that Plaintiff lacks standing to pursue this claim.

Defendants also argue that "because Plaintiff has not tendered the amount due, he cannot challenge the foreclosure sale." (Mot. 18:16-17.) "Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale that has already occurred." Foster v. SCME Mortgage Bankers, Inc., No. CIV 2:10-518-WBS GGH, 2010 WL 1408108, at *4 (E.D. Cal. April 7, 2010). Therefore, Plaintiff's claim to set aside the Trustee's Sale is a claim for wrongful foreclosure. "Under a claim for wrongful foreclosure, a plaintiff must allege a credible tender of the amount of the secured debt . . . ." Roque v. Suntrust Mortg., Inc., No. C-09-00040 RMW, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (citing Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996)); see Guerrero v. Greenpoint Mortgage Funding, Inc., No. 10-15333, 2010 WL 4117102, at *1 (9th Cir. Oct. 20, 2010) (stating the plaintiffs "lacked standing to bring a claim for 'wrongful foreclosure,' because they failed to allege actual, full and

1 | unambiguous tender of the debt owed on the mortgage") (citing <u>Karlsen v.</u>
2 | <u>Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971)). Plaintiff does
3 | not allege tender of the amount of debt owed, or his ability to tender.
4 | Therefore, Plaintiff's claim to set aside the Trustee's Sale is
5 | dismissed.

<center>**F. Violation of Statute**</center>

7 |       Defendants further argue Plaintiff lacks standing to pursue
8 | his violation of statute claim. (Mot. 5:4-5.) Plaintiff alleges the
9 | following violations in this claim: 1) the Hope for Homeowners Act; 2)
10 | California Civil Code sections 2923.52 and 2923.53; and 3) California
11 | Civil Code section 2924 *et seq.* (FAC ¶¶ 114-141.)

12 |       Plaintiff "concedes [in his opposition] that there is no
13 | existing authority for a private right of action under the" Hope for
14 | Homeowners Act. (Opp'n 20:1-2.) Therefore, this claim is dismissed.

15 |       Further, Plaintiff's claim under California Civil Code
16 | sections 2923.52 and 2923.53 is dismissed with prejudice since "neither
17 | section 2923.52 or section 2923.53 provides any private right of
18 | action[.]" <u>Vuki v. Superior Court</u>, 189 Cal. App. 4th 791, 794, 799
19 | (2010) ("Enforcement of sections 2923.52 and 2923.53 is committed to
20 | regulatory agencies[;] . . . [n]ot only is there no express unmistakable
21 | private right to sue . . . , there is a virtually unmistakable intent
22 | not to allow a private right to sue.").

23 |       Defendants argue Plaintiff lacks standing to pursue his claim
24 | alleged under California Civil Code section 2924 *et seq.* (Mot. 5:4-5.)
25 | Plaintiff alleges in this claim that "Defendant CALIFORNIA WESTERN AND
26 | AURORA violated the California Foreclosure laws by . . . [f]ailing to
27 | post notice of the trustee's sale as required [and] . . . [f]ailing to
28 | send notice of the trustee's sale by certified mail as required[.]" (FAC

<center>17</center>

¶ 139.) Since Defendants have not shown that accrual of this claim occurred before the foreclosure sale was consummated, Defendants standing argument is unavailing.

Defendants also argue "[i]t remains unclear exactly what statutory provision Plaintiff invokes" in his claim. (Mot. 22:1.) However, Plaintiff specifically alleges a violation of California Civil Code section 2924 *et seq*. (FAC ¶¶ 109, 138.) Therefore, this portion of the dismissal motion is denied.

### G. Fraud and Deceit

Defendants also seek dismissal of Plaintiff's fraud and deceit claims, arguing Plaintiff lacks standing to pursue the claims. (Mot. 5:4-5.) Plaintiff alleges two "Fraud and Deceit" claims.

Plaintiff alleges MERS was not the holder of the note, Aurora never was the holder of the note, and that "[t]he representation that [P]laintiff was in default on an obligation is false and fraudulent, since there is no evidence that AURORA or MERS is or was the actual beneficiary of the note[.]" Id. ¶ 112. Plaintiff alleges, therefore, Defendants lacked standing to commence foreclosure proceedings. Id. ¶ 108; 115. This claim accrued when the Notice of Default was recorded, which occurred prior to the close of Plaintiff's bankruptcy proceeding. Therefore, Plaintiff lacks standing to pursue this claim, and this claim is dismissed.

Plaintiff also alleges fraud and deceit based on the following allegations: "[t]hroughout the course of the loan modification discussions with AURORA, plaintiff's agent had numerous discussions with the representatives of AURORA . . . . [and] [m]any of [their] representations were in fact false." (FAC ¶¶ 116-117.) "[D]efendant AURORA never intended to provide plaintiff with a loan modification

agreement, and falsely misled the borrower into believing that is what he received." Id. ¶ 118. "AURORA, through their representatives falsely misled plaintiff and his agent to believe that . . . there was no sale date set; [and] that the account was in 'loan modification' status." Id. ¶ 119. Defendants have not shown that this claim accrued prior the close of Plaintiff's bankruptcy proceeding and therefore, Defendants standing argument is unpersuasive.

Defendants also seek dismissal of Plaintiff's this fraud and deceit claim, arguing this claim is not alleged with the particularity required under Rule 9(b); and Plaintiff's allegations "lump[] all of the defendants together, [and] fail[] to differentiate between them." (Mot. 22:6-17.) Plaintiff responds that his "complaint sets forth in detail the dates and conversations with the representatives of Aurora." (Opp'n 24:15-16.)

Rule 9(b) requires that fraud claims be "accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124. Plaintiff's allegations in this claim do not provide the specificity required by Rule 9(b) since Plaintiff has failed to include in his allegations the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz, 476 F. 3d at 764. Therefore, this claim is dismissed.

### H. Injunctive Relief and Declaratory Relief

Defendants also argue Plaintiff's injunctive relief and declaratory relief claims should be dismissed since there is "no recognized claim for 'injunctive relief'" and Plaintiff's "declaratory relief claim that is duplicative of other claims [and therefore, it] should be dismissed." (Mot. 9:25, 10:23-24.) Plaintiff responds that

1  "[w]hether fashioned as a cause of action or a remedy adjunct to the
2  causes of action is a matter of formality, not of substance." (Opp'n
3  9:8-9.)

4          An injunction is a remedy, not a claim in and of itself. See
5  Curtis v. Option One Mortg. Corp., No. 109-cv-1608 AWI SMS, 210 WL
6  599816, at *13 (E.D. Cal. Feb 18, 2010) (citing Washington Toxics
7  Coalition v. Environmental Protection Agency, 413 F. 3d 1024, 1034 (9th
8  Cir. 2005). Therefore, Plaintiff's injunctive relief claim is dismissed.

9          Further, a "federal court may decline to address a claim for
10 declaratory relief" where the substantive claims "would resolve the
11 issues raised by the declaratory action[.]" Fimbres v. Chapel Mortg.
12 Cop., No. 09-cv-0886-IED, 2009 WL 416332, at *5 (S.D. Cal. Nov. 20,
13 2009) (citations and internal quotation marks omitted). Plaintiff's only
14 remaining claim is his violation of statute claim, in which Plaintiff
15 includes the following request: "a declaration of the rights and
16 liabilities of the parties" and "a declaration . . . that the Trustee's
17 sale, conducted on or about November 2, 2009 is void[.]" (FAC 25:12-13.)
18 This request is identical to the relief Plaintiff requests in his
19 declaratory relief claim. Id. 23:14-16. Therefore, Plaintiff's
20 declaratory relief claim is dismissed since it is duplicative of the
21 relief sought in Plaintiff's violation of statute claim.

22

23                          **V. CONCLUSION**

24          For the stated reasons, Defendants' motion to dismiss is
25 granted in part and denied in part. Further, Defendants' motion to
26 strike Plaintiff's request for punitive damages is denied as moot in
27 light of the dismissal rulings. Plaintiff is granted ten (10) days from
28 the date on which this order is filed to file a Second Amended Complaint

in which he addresses the deficiencies discussed above. Further, Plaintiff is notified that if he fails to amend his complaint within the prescribed time period, the dismissal could be converted to a dismissal with prejudice under Federal Rule of Civil Procedure 41(b).

Dated:  March 18, 2011

GARLAND E. BURRELL, JR.
United States District Judge