IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VANG CHANTHAVONG,          )
                          )    2:10-cv-2269-GEB-JFM
          Plaintiff,      )
                          )
     v.                   )    <u>ORDER GRANTING IN PART AND</u>
                          )    <u>DENYING IN PART DEFENDANTS'</u>
AURORA LOAN SERVICES, INC., a )  <u>MOTION TO DISMISS AND DENYING</u>
Delaware Corporation; MORTGAGE )  <u>MOTION TO STRIKE</u>
ELECTRONIC REGISTRATION SYSTEMS, )
INC.,                     )
                          )
          Defendants.     )
_____ )

          Defendants Aurora Loan Services, LLC ("Aurora") and Mortgage
Electronic Registration Systems, Inc. ("MERS"; collectively,
"Defendants") seek dismissal of Plaintiff Van Chanthavong's Second
Amended Complaint ("SAC"). Dismissal is sought under Federal Rule of
Civil Procedure ("Rule") 12(b)(6), based on the argument that the SAC
fails to state a viable claim. (ECF No. 28.) Defendants also seek to
have striken Plaintiff's request for punitive damages under Rule 12(f).
<u>Id.</u> Plaintiff filed an opposition brief. (ECF No. 29.) For the reasons
stated below, Defendants' dismissal motion will be granted in part and
denied in part and the motion to strike will be denied.

### I. PLAINTIFF'S ALLEGATIONS IN SAC

The following factual allegations are from the SAC. On August 24, 2007 Plaintiff and Lehman Brothers "entered into a loan agreement for the refinancing of" Plaintiff's real property located at 1900 H Street, Sacramento, California (the "Property"). (SAC ¶¶ 1, 24.) Plaintiff executed an adjustable rate note (the "Note") and a deed of trust (the "Deed") for the Property. Id. ¶¶ 24-25, Exs. A-B. The Deed lists Lehman Brothers as the lender and MERS "as a nominee for Lender and Lender's successors and assigns." Id. ¶¶ 25, 29, Ex. B. "MERS is . . . the beneficiary under this Security Instrument." Id. ¶ 25. Plaintiff "default[ed] under the terms of the Note." Id. ¶ 35. On August 15, 2008, a Notice of Default was recorded that listed MERS as the contact to "find out the amount [Plaintiff had to] pay, or to arrange for payment to stop the foreclosure[.]" Id. ¶ 36, Ex. C. On October 16, 2008, MERS recorded a substitution of trustee in which MERS is the "'nominee for LEHMAN BROTHERS BANK, FSB,' . . . the original beneficiary." Id. ¶ 37. Plaintiff alleges "[u]pon information and belief, MERS is not, and never has been in possession of the Note." Id. ¶ 38.

Plaintiff filed for bankruptcy protection in the Eastern District of California on April 21, 2009. Id. ¶ 43. Plaintiff alleges Defendants violated the automatic bankruptcy stay on April 24, 2009 by causing "to be published a Notice of Trustee's Sale, and post[ing] it" at the Property. Id. ¶ 44. MERS, as nominee for Lehman Brothers, transferred all beneficial interest under the Deed to Aurora on June 8, 2009. Id. ¶ 45, Ex. E. Plaintiff alleges "[t]his [transfer] action was void because it violated the automatic stay" and "[t]here is no endorsement or allonge evidencing that LEHMAN BROTHERS, MERS, or AURORA

LOAN SERVICES is or was the holder of the note." Id. ¶¶ 45-46.

The Bankruptcy Court filed an Order Discharging the Debtors on August 3, 2009, and Plaintiff's bankruptcy case was closed August 14, 2009. Id. ¶ 48. "Plaintiff alleges that since there is no evidence that LEHMAN BROTHERS, MERS, nor AURORA ever took actual possession of the note, its security interest was never perfected, [and was] not perfected at the time of filing the debtor's bankruptcy, and thus the underlying debt was discharged." Id. ¶ 49.

Plaintiff alleges that both before and after his bankruptcy filing, "Plaintiff's agent, Boomie Cotton, and AURORA Loan Services . . . engaged in discussions of loan modification." Id. ¶ 50. Plaintiff further alleges: "On September 7, 2009, plaintiff's agent contacted AURORA and was advised that the payment could not be made and was told that they would give a 10 day grace period. Payment was . . . credited to plaintiff's account on or about September 24, 2009." Id. ¶ 53. "On . . . September 11, 2009, Defendants caused to be published a Notice of Trustee's Sale set for September 30, 2009." Id. ¶ 54, Ex. G. Plaintiff alleges he was unaware that a Notice of Trustee's Sale was filed and never received notice. Id. ¶ 55.

Plaintiff received a Special Forbearance Agreement from Aurora, which he signed and returned on September 21, 2009. Id. ¶ 56, Ex. H. Plaintiff attaches to his SAC a copy of the Special Forbearance Agreement that he signed; however, it is not signed by Aurora. Id. Ex. H. Plaintiff alleges his agent contacted Aurora on September 24, 2009, to clarify the agreement "and was told that the agreement was a six month trial period[.]" Id. ¶ 57. "[P]laintiff's agent was told by representatives of AURORA that there was no sale date and that the property was not in foreclosure, but that the property was in an 'active

loan mod.'" Id. ¶ 58. "Plaintiff's Agent contacted AURORA on a monthly basis and was repeatedly told that there was no foreclosure date set[.]" Id. ¶ 59.

Plaintiff alleges his agent mailed Plaintiff's October payment to Aurora on October 19, 2009, and again asked "if there was a sale date[; the agent] was told the loan was not in foreclosure and there was no sale date." Id. ¶ 64. Plaintiff alleges: "On or about October 30, 2009, defendants conducted a private foreclosure sale without notice to plaintiff or his agent of any default in the loan modification agreement." Id. ¶ 65. Plaintiff alleges the Notice of Trustee's Sale was never posted on the premises, mailed by certified mail, or received by the Plaintiff. Id. ¶¶ 66-67.

Plaintiff alleges he was advised that the Property was for sale on November 2, 2009, when a real estate agent came to the Property. Id. ¶ 70. Plaintiff alleges that same day "plaintiff's agent spoke with defendant AURORA and asked when the loan modification/forbearance agreement was canceled, and was told that it was canceled on October 20, 2009. Plaintiff [alleges he] never received a notice of cancellation." Id. 9:24-26.[1] Plaintiff alleges on November 3, 2009, his

> agent contacted the foreclosure trustee and discovered for the first time that the trustee's sale had been continued from month to month and also learned for the first time that a new notice of trustee's sale had been published and a new sale date set for October 30, 2009. AURORA advised that . . . the property was sold on October 30, 2009.

Id. 10:20-24. "[P]laintiff's agent . . . discovered that sales dates had

_____

[1] Beginning on page 9 line 21 in the SAC, Plaintiff re-uses the numbers 53 through 70 in numbering his paragraphs; then beginning on page 24 line 2, Plaintiff re-uses the numbers 126 through 154. Therefore, these paragraphs are referred to by the page and line number, rather than the paragraph numbers.

been set on 2/2/09, 3/4/09, 5/12/09, 9/12/09, 7/15/09, 8/18/09, 9/30/09, and 10/30/09." Id. 10:7-9. Plaintiff alleges that he, "and his agent or representative had . . . numerous conversations with the loan servicing agent and was told there was no sale date set." Id. 10:27-28.

Plaintiff also alleges in the SAC that "[f]ollowing the filing of this case," the bankruptcy trustee "was advised of the possible claim of the estate and . . . the Trustee [was given] an opportunity to review the complaint [Plaintiff filed in this district court,] and [to] advise the [bankruptcy] court whether he wished to pursue the claim on behalf of the estate." Id. 11:12-16. Plaintiff further alleges in the SAC that the Bankruptcy Court did not reopen his bankruptcy case and "[a]s a result, the 'asset' was effectively abandoned back to the debtor by operation of law[.]" Id. 11: 17-19.

## II. DISCUSSION

Defendants seek dismissal of Plaintiff's claims arguing, *inter alia*: "Plaintiff lacks standing to assert several of his . . . [claims] because he failed to include those claims as assets of his estate in his Chapter 7 Petition" and "each of Plaintiff's . . . claims fails because they do not meet the pleading requirements." (Defs.' Mem. of P. & A. ("Mot.") 1:19-21, 2:1-2.) Plaintiff's SAC is comprised of what is labeled as the following ten claims, three of which comprise more than a single claim: 1) injunctive relief, 2) declaratory relief, 3) breach of contract, 4) negligence/negligent misrepresentation, 5) demand to produce the note, 6) demand to set aside the trustee's sale, 7) demand to cancel the trustee's deed, 8) request to quiet title, 9) violation of statute, and 10) fraud and deceit. (SAC ¶¶ 71-159.)

Defendants argue Plaintiff's demand to cancel the trustee's deed and request to quiet title should be dismissed because Plaintiff

included those claims in his SAC without receiving leave of court to allege these claims. (Mot. 4:23-5:4.) These claims were not alleged in Plaintiff's First Amended Complaint ("FAC") and were included in the SAC without leave of court to include the claims in a SAC. An Order filed March 18, 2011, decided Defendants' motion to dismiss Plaintiff's FAC and granted Plaintiff leave to "file a Second Amended Complaint in which he could "address the deficiencies discussed" in the Order. (Order 20:28-21:1, ECF No. 22.) Since the two challenged claims were not alleged in the FAC, this portion of Defendants' motion to dismiss is granted.

## A. STANDING

Defendants also argue Plaintiff lacks standing to prosecute the following claims because they "remain part of the bankruptcy estate": demand to produce the note, demand to set aside the trustee's sale, violation of statute, and fraud and deceit. (Mot. 7:1-24, 7:27-8:1.) Plaintiff only responds to the Defendants' standing challenge to his claim to set aside the trustee's sale, arguing since this claim "accrue[d] when the foreclosure occur[red]" he has standing to pursue this claim because it is not part of the bankruptcy estate. (Opp'n 9:24.)

Only the trustee has standing to prosecute the claims that are part of a bankruptcy estate, since "the bankruptcy trustee controls the bankruptcy estate, [and] is the real party in interest in the suits that belong to the estate." Griffin v. Allstate Ins. Co., 920 F. Supp. 127, 130 (C.D. Cal. 1996). The filing of a bankruptcy petition "creates an estate [which] is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "11 U.S.C. § 541(a)(1) . . . defines property of the

bankruptcy estate to include 'all legal or equitable interests of the debtor in property as of the commencement of the case.' The scope of section 541 is broad, and includes causes of action." <u>Sierra Switchboard Co. v. Westinghouse Elec. Corp.</u>, 789 F.2d 705, 707 (9th Cir. 1986). "11 U.S.C. § 521(1) [of the bankruptcy code] provides that, '[t]he debtor shall file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.'" <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 784 (9th Cir. 2001).

"[A] debtor who fail[s] to disclose a pending claim as an asset in a bankruptcy proceeding where debts were permanently discharged [is] estopped from pursuing such claim in a subsequent proceeding." <u>Id.</u> Further "[t]he debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." <u>Id.</u> at 784-85. "If [the debtor] fail[s] to properly schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and does not revert to [the debtor]." <u>Cusano v. Klein</u>, 264 F.3d 936, 945-46 (9th Cir. 2001) (citing <u>Vreugdenhill v. Navistar Int'l Transp. Corp.</u>, 950 F.2d 524, 526 (8th Cir. 1991) (property is not abandoned by operation of law unless the debtor "formally schedule[s] the property before the close of the case")).

"Plaintiff did not list any claim sub judice in his bankruptcy filing." (Order 10:4-5, ECF No. 22.) "[G]enerally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." <u>Cusano</u>, 264 F.3d at 947. A claim accrues when an "action could have been brought[.]" Id.

1    Defendants argue "[b]ecause Plaintiff never scheduled the
2    [subject SAC claims] . . . in his bankruptcy petition, . . . Plaintiff
3    lacks standing to bring . . . [the subject claims because they] arose
4    before August 14, 2009[,]" the date on which Plaintiff's bankruptcy case
5    was closed. (Mot. 6:15-20.) Plaintiff alleges in his SAC that his
6    unsuccessful attempt to reopen his bankruptcy case after filing this
7    action, resulted in the "'asset[s]' [being] effectively abandoned back
8    to the [Plaintiff] by operation of law." (SAC 11:19.)

9    A bankruptcy trustee may abandon assets; however, property
10   that is not abandoned or administered by the trustee remains property of
11   the estate. 11 U.S.C. §§ 554 (a), (d). "'Abandonment' is a term of art
12   with special meaning in the bankruptcy context. It is the formal
13   relinquishment of the property at issue from the bankruptcy estate."
14   Catalano v. C.I.R., 279 F.3d 682, 685 (9th Cir. 2002). "In short,
15   abandonment requires formal notice and a hearing." Id. at 686 (citation
16   and internal quotation marks omitted). "The Bankruptcy Court's Order
17   denying Plaintiff's motion to reopen his bankruptcy case did not state
18   any property was abandoned by the trustee." (Order 10:26-28, ECF No.
19   22.) Therefore, any claim that accrued prior to the close of Plaintiff's
20   bankruptcy case remains in the bankruptcy estate.

21   **1. Demand to Produce the Note**

22   Defendants argue Plaintiff's demand to produce the Note claim,
23   in which he alleges "Defendants lacked possession of the Note and thus
24   could not foreclose[,] accrued when the Notice of Default was recorded."
25   (Mot. 7:1-3.) Plaintiff alleges in the SAC that the Notice of Default
26   was recorded on August 15, 2008. (SAC ¶ 36, Ex. C.)

27   Plaintiff's demand to produce the Note claim accrued when MERS
28   recorded the Notice of Default on August 15, 2008, since an "action

could have been brought" to challenge the foreclosure proceedings and Defendants' right to foreclose once the Notice of Default was recorded. Cusano, 264 F.3d at 947. Therefore, Plaintiff's "demand to produce the Note" claim accrued prior to the close of Plaintiff's bankruptcy and should have been listed in Plaintiff's bankruptcy estate. Accordingly, this claim remains in the bankruptcy estate and Plaintiff does not have standing to pursue this claim. Therefore, Defendants' motion to dismiss this claim is granted.

Further, "Defendants request that the Court grant the Motion to Dismiss . . . without leave to amend." (Mot. 2:3.) This claim was previously dismissed for the same reasons when the Court granted Defendants' previous dismissal motion challenging the FAC. (Order 15:23-28, ECF No. 22.) Since Plaintiff failed to address the issues identified in the previous Order, it is clear "any amendment would be futile, [and] there [is] no need to prolong the litigation by permitting further amendment." Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002). Therefore, this claim is dismissed with prejudice.

**2. Demand to Set Aside the Trustee's Sale**

Defendants argue Plaintiff lacks standing to bring his set aside of the trustee's sale claim. (Mot. 7:6-13.) Plaintiff alleges in his SAC "that at the time the Notice of Default was recorded, neither LEHMAN BROTHERS, MERS, AURORA, nor CAL WESTERN RECONVEYANCE had possession of the note and thus had no standing or authority to initiate foreclosure proceedings on the deed of trust, rendering the Notice of Default Void"; and, that "defendants failed to comply with Civil Code 2924f and failed to provide written notice of the trustee's sale or post said notice on the property." (SAC ¶¶ 130-131.)

///

1    Defendants argue "Plaintiff bases this claim on Defendants'
2    lack of possession of the Note and thus their lack of authority to
3    initiate foreclosure proceedings." (Mot. 7:6-8.) Defendants further
4    argue that since "the Notice of Default was recorded on August 15, 2008,
5    and the Notice of Trustee's Sale was recorded on April 24, 2009[,]"
6    which is prior to the close of Plaintiff's bankruptcy estate on August
7    14, 2009, "Plaintiff lacks standing to bring this claim here." (Mot.
8    7:10-13.) Plaintiff counters that "[t]he fraudulent activities of
9    defendants occurred both before and after the bankruptcy, and since
10   . . . the foreclosure[] occurred post discharge, the claim is not
11   property of the bankruptcy estate" since this claim "accrues when the
12   foreclosure occurs." (Opp'n 10:4-6, 9:24.) However, Defendants have not
13   shown that Plaintiff could have brought this claim before the
14   foreclosure sale occurred; therefore, this portion of the motion is
15   denied.

16   **3. Violation of Statute**

17   Defendants also argue Plaintiff lacks standing to pursue his
18   violation of statute claim, alleged under California Civil Code section
19   2924. (Mot. 7:14-19.) Plaintiff alleges in this claim that "CALIFORNIA
20   WESTERN AND AURORA violated the California Foreclosure laws by . . .
21   [f]ailing to post notice of the trustee's sale as required[ and] . . .
22   [f]ailing to send notice of the trustee's sale by certified mail as
23   required[.]" (SAC 25:2-5.) Defendants argue "this claim accrued on April
24   24, 2009," when the Notice of Trustee's Sale was recorded and posted.
25   (Mot. 7:16-17.) However, Defendants have not shown that Plaintiff could
26   have brought this claim before the foreclosure sale occurred; therefore,
27   this portion of the motion is denied.
28   ///

### 4. Fraud and Deceit

Defendants also argue that Plaintiff lacks standing to pursue his fraud and deceit claim, which is based on Plaintiff's allegation that Defendants fraudulently initiated foreclosure proceedings when they filed the Notice of Default, since "the Notice of Default was recorded prior to the close of Plaintiff's bankruptcy[.]" (Mot. 7:20-24.) Plaintiff alleges two fraud and deceit claims; one of them is addressed in this section of the Order and the other fraud and deceit claim is addressed *infra*. (SAC 25:15-27:21.)

Plaintiff alleges in this claim that MERS and Aurora were never holders of the Note and consequently, "[t]he representation that [P]laintiff was in default on an obligation is false and fraudulent, since there is no evidence that AURORA or MERS is or was the actual beneficiary of the note." Id. 25:27-28. Plaintiff alleges, therefore, "Defendants lacked standing to commence . . . foreclosure" proceedings. Id. 25:17. This claim accrued when the Notice of Default was recorded, which occurred prior to the close of Plaintiff's bankruptcy proceeding. Therefore, Plaintiff lacks standing to pursue this claim, and this claim is dismissed. Further, this claim was previously dismissed in a prior order on these grounds; therefore, this claim is dismissed with prejudice.

### B. FAILURE TO STATE A CLAIM

Defendants argue Plaintiff's remaining claims for breach of contract, negligence, negligent misrepresentation, demand to set aside the trustee's sale, violation of statute, fraud and deceit, injunctive relief, and declaratory relief should be dismissed since they fail to state a claim under Rule 12(b)(6).

///

1    Dismissal under Rule 12(b)(6) is appropriate only where a
2    claim either 1) lacks a cognizable legal theory, or 2) lacks factual
3    allegations sufficient to support a cognizable legal theory. Balistreri
4    v. Pacific Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). To avoid
5    dismissal, a plaintiff must allege "enough facts to state a [plausible]
6    claim to relief[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547
7    (2007).

8    In deciding a Rule 12(b)(6) motion, the material allegations
9    of the complaint are accepted as true and all reasonable inferences are
10   drawn in favor of the plaintiff. See al-Kidd v. Ashcroft, 580 F.3d 949,
11   956 (9th Cir. 2009). However, "the tenet that a court must accept as
12   true all of the allegations contained in a complaint is inapplicable to
13   legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A
14   pleading that offers 'labels and conclusions' or 'a formulaic recitation
15   of the elements of a cause of action will not do.' Nor does a complaint
16   suffice if it tenders 'naked assertion[s]' devoid of 'further factual
17   enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). "In sum, for
18   a complaint to survive a motion to dismiss, the nonconclusory 'factual
19   content,' and reasonable inferences from that content, must be plausibly
20   suggestive of a claim entitling the plaintiff to relief." Moss v. United
21   States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

22   **1. Breach of Contract**

23   Defendants argue, *inter alia*, that Plaintiff's breach of
24   contract claim should be dismissed since the Special Forbearance
25   Agreement is only signed by Plaintiff, and therefore the statute of
26   frauds precludes it from being enforceable against Defendants. (Mot.
27   10:16-24.)
28   ///

12

1    Plaintiff counters he "has ple[d] breaches of two written

2   agreement[s:] 1) the written agreement with LEHMAN BROTHERS, alleging

3   wrongful and fraudulent origination, assignment and servicing; [and] 2)

4   the written agreement with AURORA re the Special Forbearance Agreement."

5   (Opp'n 5:23-25.) However, Plaintiff's pled breach of contract claim is

6   based solely on his allegations that Defendants breached the Special

7   Forbearance Agreement. (SAC ¶¶ 94-106.) Plaintiff also argues that since

8   Aurora "accepted payments under the agreement, and agreed to postpone

9   the sale at least initially[,] . . . Aurora is estopped [from] deny[ing]

10   the existence of any agreement[.]" (Opp'n 6:24-27.)

11    "[A]n agreement by which a lender agreed to forbear from

12   exercising the right of foreclosure under a deed of trust securing an

13   interest in real property comes within the statute of frauds." <u>Secrest</u>

14   <u>v. Sec. Nat'l Mortg. Loan Trust 2002-2</u>, 167 Cal. App. 4th 544, 547

15   (2008) (holding an unsigned forbearance agreement violated the statute

16   of frauds since it attempted to modify a promissory note and deed of

17   trust, which are subject to the statute of frauds). Therefore, since the

18   Special Forbearance Agreement modifies Plaintiff's obligations under the

19   Note and the Deed, it comes within the statute of frauds. Further,

20   Plaintiff's argument that payments under the agreement, and the

21   agreement to postpone the foreclosure sale, estops Defendants from

22   denying the existence of an agreement "fails under well-established

23   law." <u>Id.</u> at 555.

24    Part performance allows enforcement of a contract
      lacking a requisite writing in situations in which
25    invoking the statute of frauds would cause
      unconscionable injury. To constitute part
26    performance, the relevant acts either must
      unequivocally refer to the contract, or clearly
27    relate to its terms. Such conduct satisfies the
      evidentiary function of the statute of frauds by
28    confirming that a bargain was in fact reached. In
      addition to having partially performed, the party

1                         seeking to enforce the contract must have changed
2                         position in reliance on the oral contract to such
                        an extent that application of the statute of frauds
                        would result in an unjust or unconscionable loss,
3                         amounting in effect to a fraud.

4 Id. (internal citations and quotation marks omitted). However, "[t]he

5 payment of money is not sufficient part performance to take an oral

6 agreement out of the statute of frauds[.]" Id. Further, since Plaintiff

7 "do[es] not assert [he] changed [his] position in reliance on the

8 [Special] Forbearance Agreement in any way other than by making

9 [payments,]" the statute of frauds applies to the Special Forbearance

10 Agreement and Plaintiff has not pled an enforceable contract claim. Id.

11 Since this claim was previously dismissed on these grounds, Plaintiff's

12 breach of contract claim is dismissed with prejudice because it is

13 evident that "any amendment would be futile[.]" Lipton, 284 F.3d at

14 1039.

15       **2. Negligence/Negligent Misrepresentation**

16           **a. Negligence**

17         Defendants argue Plaintiff's negligence claim should be

18 dismissed since "Plaintiff has not alleged Defendants had a duty or

19 facts showing Defendants breached any duty." (Mot. 12:24-25.) Defendants

20 argue "Plaintiff's SAC does not allege Defendants['] actions extended

21 beyond its routine involvement as a lender." Id. 13:23-24. Plaintiff

22 counters that "Aurora went beyond the scope of the role of a loan

23 originator and was actively involved in negotiating and implement[ing]

24 a Special Forbearance Agreement/Loan Modification Agreement." (Opp'n

25 8:7-9.) Plaintiff further argues that when "Aurora undertook the duty of

26 negotiating the terms of the 'Special Forbearance Agreement' and

27 updating the borrower regarding status and terms[,] . . . it acted as

28 more than just an institution that funded the loan." Id. 8:14-16.

"[A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991). Plaintiff's allegations do not plausibly suggest that the Defendants "actively participate[d] in the financed enterprise beyond the domain of the usual money lender." Id. Therefore, this portion of Defendants' dismissal motion is granted. Further, since this claim was previously dismissed for this reason, Plaintiff's negligence claim is dismissed with prejudice.

### b. Negligent Misrepresentation

Defendants also argue Plaintiff's negligent misrepresentation claim should be dismissed since "Plaintiff has not differentiated between the different defendants nor alleged the time, place, and other specifics of any misrepresentations." (Mot. 14:17-18.) Plaintiff counters that his SAC "sets forth that the person(s) answering the phone purported to render advice regarding the status of the loan; that the persons had knowledge of the transaction and apparent authority to speak for the corporation; [and] the nature of the factual misrepresentations." (Opp'n 8:22-24.)

The elements of a fraud claim under California law are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engall v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." Caldo v. Owens-Illinois,

1 | _Inc._, 125 Cal. App. 4th 513, 519 (2004).

2 | "It is established law . . . that Rule 9(b)'s particularity

3 | requirement applies to state-law causes of action." _Vess v. Ciba-Geigy_

4 | _Corp._, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b)'s heightened

5 | pleading requirements apply to Plaintiff's negligent misrepresentation

6 | claim since this claim is "grounded in fraud [and is alleged] to sound

7 | in fraud." _Kearns v. Ford Motor Co._, 567 F.3d 1120, 1125 (9th Cir. 2009)

8 | (internal quotation marks omitted). Rule 9(b) prescribes that "[i]n

9 | alleging fraud or mistake, a party must state with particularity the

10 | circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).

11 | Accordingly, a fraud averment must include "an account of the 'time,

12 | place, and specific content of the false representations as well as the

13 | identities of the parties to the misrepresentations.'" _Swartz v. KPMG_

14 | _LLP_, 476 F.3d 756, 764 (9th Cir. 2007) (quoting _Edwards v. Marin Park,_

15 | _Inc._, 356 F.3d 1058, 1066 (9th Cir. 2004)).

16 | Plaintiff alleges in his negligent misrepresentation claim:

17 | Plaintiff[']s agent was in continual contact with
18 | Aurora through the 800 number, and each time she was told that there was no sale date, that the loan was in bankruptcy or loan modification.
19 | [When calling the 800 number, a] caller is prompted to enter in the loan number and the agent comes on
20 | the phone . . . . The representative of Aurora had apparent authority to discuss details of the loan,
21 | status of the loan, status of the loan modification, payments due, and status of trustee's
22 | sale, if any, and foreclosure status. The names of the agent or agents plaintiff talked to are in the
23 | possession of AURORA and peculiarly within the knowledge of defendant.
24 | On 10/19/09 plaintiff[']s agent called the 800-669-0102 number and asked . . . , "Is this loan
25 | in foreclosure?" The answer was "NO." She then said . . . "there is NO . . . scheduled foreclosure sale
26 | date right?" Again, the answer was "no, because your loan is on a modification plan[.]"

27 |

28 | (SAC ¶¶ 112-114.)

1    These allegations against Aurora in Plaintiff's negligent
2    misrepresentation claim provide the required specificity since Plaintiff
3    sufficiently alleges the "time, place, and specific content of the false
4    representations[.]" <u>Swartz</u>, 476 F.3d at 764. "The only arguable
5    deficiency in plaintiff's allegations of fraud is that the [S]AC does
6    not state the names of all the individual representatives of the
7    defendant[]." <u>Susilo v. Wells Fargo Bank, N.A.</u>, No. CV 11-1814 CAS, 2011
8    WL 2471167, at *10 (C.D. Cal. June 21, 2011). However, 9(b)'s
9    "requirement is relaxed where the defendant must necessarily possess
10   full information concerning the facts of the controversy, or when the
11   facts lie more in the knowledge of the opposite party." <u>Id.</u> (internal
12   citations and quotation marks omitted). Therefore, Plaintiff has
13   sufficiently alleged this claim against Aurora.

14   However, "Rule 9(b) does not allow a complaint to merely lump
15   multiple defendants together but 'require[s] plaintiffs to differentiate
16   their allegations when suing more than one defendant . . . and inform
17   each defendant separately of the allegations surrounding his alleged
18   participation in the fraud.'" <u>Swartz</u>, 476 F.3d at 764-765 (internal
19   citations omitted). Since Plaintiff's factual allegations in this claim
20   are solely related to Aurora and Plaintiff does not allege any conduct
21   by MERS, Plaintiff's negligent misrepresentation claim against MERS is
22   dismissed.

23   **3. Demand To Set Aside the Trustee's Sale**

24   Defendants argue that "[b]ecause Plaintiff has not tendered
25   the amount due, he cannot challenge the foreclosure sale and the Court
26   should dismiss this claim." (Mot. 16:12-13.) Plaintiff does not respond
27   to this argument.

28   "Wrongful foreclosure is an action in equity, where a

17

plaintiff seeks to set aside a foreclosure sale that has already occurred." <u>Foster v. SCME Mortgage Bankers, Inc.</u>, No. CIV 2:10-518-WBS GGH, 2010 WL 1408108, at *4 (E.D. Cal. April 7, 2010). Therefore, Plaintiff's claim to set aside the Trustee's Sale is a wrongful foreclosure claim. "Under a claim for wrongful foreclosure, a plaintiff must allege a credible tender of the amount of the secured debt . . . ." <u>Roque v. Suntrust Mortg., Inc.</u>, No. C-09-00040 RMW, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (citing <u>Abdallah v. United Savings Bank</u>, 43 Cal. App. 4th 1101, 1109 (1996)); <u>see</u> <u>Guerrero v. Greenpoint Mortgage Funding, Inc.</u>, 403 Fed. Appx. 154, 157 (9th Cir. 2010) (stating the plaintiffs "lacked standing to bring a claim for 'wrongful foreclosure,' because they failed to allege actual, full and unambiguous tender of the debt owed on the mortgage") (citing <u>Karlsen v. Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971)). Plaintiff does not allege tender of the amount of debt owed, or his ability to tender. Plaintiff was previously informed of this pleading deficiency in a ruling deciding a challenge to Plaintiff's FAC. (Order 17:2-5, ECF No. 22.) Therefore, Plaintiff's claim to set aside the trustee's sale is dismissed with prejudice since it is clear "any amendment would be futile[.]" <u>Lipton</u>, 284 F.3d at 1039.

### 4. Violation of Statute

Defendants seek dismissal of Plaintiff's violation of statute claim. (Mot. 20:7-27.) Plaintiff alleges in this claim that each Defendant violated: 1) California Civil Code sections 2923.52 and 2923.53; and 2) California Civil Code section 2924 *et seq*. (SAC 22:26-25:9.)

Plaintiff's claims under California Civil Code sections 2923.52 and 2923.53 were previously "dismissed with prejudice since neither section 2923.52 or section 2923.53 provides any private right of

action." (Order 17:16-18, ECF No. 22 (citation and internal quotation marks omitted).) Therefore, these claims are stricken.

Further, while Plaintiff does not cite to California Civil Code section 2923.5, it is clear he is alleging a claim under this statute since he cites to <u>Mabry v. Superior Court</u>, 1185 Cal. App. 4th 208, 214 (2010), which held that "section 2923.5 [may] be enforced by a private right of action[.]" (SAC 24:20-21.) However, this claim was not alleged in Plaintiff's FAC and was included in the SAC without leave of court to include this claim in the SAC. Therefore, Plaintiff's section 2923.5 claim is dismissed.

Defendants argue Plaintiff has not stated a claim under California Civil Code section 2924. (Mot. 20:17.) Plaintiff alleges in this claim that "Defendant CALIFORNIA WESTERN AND AURORA violated the California Foreclosure laws by . . . [f]ailing to post notice of the trustee's sale as required [and] . . . [f]ailing to send notice of the trustee's sale by certified mail as required[.]" (SAC 25:2-5.)

Defendants argue, *inter alia*, that "Plaintiff must allege he can tender the amount of the loan to state a wrongful foreclosure claim." (Mot. 21:17-18.) Plaintiff alleges the foreclosure sale was not conducted in accordance with California Civil Code section 2924 et seq. and "[a]s a proximate result of defendant's violation of statute, plaintiff's property has wrongfully been foreclosed upon." (SAC 25:5-7.) Plaintiff seeks "a declaration . . . that the Trustee's sale . . . is void[.]" <u>Id.</u> 30:18-19. Since Plaintiff is alleging a wrongful foreclose claim, he must plead tender or ability to tender. <u>See</u> <u>Roque</u>, 2010 WL 546896, at *4. Plaintiff fails to do so. Therefore, Defendants' motion to dismiss this claim is granted.

///

### 5. Fraud and Deceit

Defendants also seek dismissal of Plaintiff's remaining fraud and deceit claim, arguing Plaintiff fails to "state the contents of alleged misrepresentative statements, as well as the role of each defendant in the alleged fraud, what is false or misleading about the statement, who made it, when it was made, where it was made and why it is false." (Mot. 21:23-26.)

Plaintiff's fraud and deceit claim is based on the following allegations: "[t]hroughout the course of the loan modification discussions with AURORA, plaintiff's agent had numerous discussions with the representatives of AURORA" and "[t]he representations to plaintiff and plaintiff's agent were in fact false." (SAC 26:12-13, 17.) "[D]efendant AURORA never intended to provide plaintiff with a loan modification agreement, and falsely misled [Plaintiff] into believing that is what he had received." Id. 26:22-25. "AURORA, through their representatives falsely misled plaintiff and his agent to believe that . . . there was no sale date set; [and] that the account was in 'loan modification' status." Id. 26:28-27:2. Plaintiff also incorporates by reference his allegations in the preceding paragraphs of his SAC. Id. 25:15-16. In Plaintiff's negligent misrepresentation claim, he sets forth allegations against Aurora which satisfy Rule 9(b)'s requirements. Id. ¶¶ 112-114.

Since Plaintiff's fraud and deceit claim is based on the same allegations against Aurora which Plaintiff alleges in his negligent misrepresentation claim, and those allegations satisfy Rule 9(b), Plaintiff's fraud and deceit claim against Aurora is sufficiently alleged. However, Plaintiff fails to sufficiently allege his fraud and deceit claim against MERS since Plaintiff does not include any factual

allegations against MERS in this claim; therefore, Plaintiff's fraud and deceit claim against MERS is dismissed.

### 6. Injunctive Relief and Declaratory Relief

Defendants also argue Plaintiff's injunctive relief and declaratory relief claims should be dismissed since there is "no recognized claim for 'injunctive relief'" and Plaintiff's "declaratory relief claim . . . is duplicative of other claims [and therefore, it] should be dismissed." (Mot. 8:5-6, 10:9:12-13.) Plaintiff responds that "[w]hether fashioned as a cause of action or a remedy adjunct to the causes of action is a matter of formality, not of substance." (Opp'n 5:20-21.)

An injunction is a remedy, not a claim in and of itself. See Curtis v. Option One Mortg. Corp., No. 109-cv-1608 AWI SMS, 2010 WL 599816, at *13 (E.D. Cal. Feb 18, 2010) (citing Washington Toxics Coalition v. Environmental Protection Agency, 413 F. 3d 1024, 1034 (9th Cir. 2005). Therefore, Defendants' motion to dismiss Plaintiff's injunctive relief claim is granted.

Further, a "federal court may decline to address a claim for declaratory relief" where the substantive claims "would resolve the issues raised by the declaratory action[.]" Fimbres v. Chapel Mortg. Cop., No. 09-cv-0886-IED, 2009 WL 416332, at *5 (S.D. Cal. Nov. 20, 2009) (citations and internal quotation marks omitted). Since Plaintiff's declaratory relief claim is duplicative of the relief sought in Plaintiff's remaining claims, Defendants' motion to dismiss this claim is granted.

### C. MOTION TO STRIKE

Defendants also move under Rule 12(f) for an order striking Plaintiff's request for punitive damages, arguing these damages "are not

recoverable as a matter of law." (Mot. 22:23-24.)

Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 971 (9th Cir. 2010).

> The proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f). However, where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion to strike, the Court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion.

Parker v. Fidelity Security Life Ins. Co., No. CIV F 06-654 AWI DLB, 2006 WL 2190956, at *5 (E.D. Cal. Aug. 1, 2006).

Defendants argue "Plaintiff fails to allege sufficient facts to support a request for punitive damages" since "he does not allege any specific reasons for the request." (Mot. 23:8-9, 19-20.) California Civil Code section 3294(a) prescribes:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Since two of Plaintiff's remaining claims are grounded in fraud, Defendants' motion to strike is denied.

### III. CONCLUSION

For the stated reasons, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff is granted ten (10) days from the date on which this order is filed to file a Third Amended

Complaint in which he addresses the deficiencies in any claim Plaintiff was previously granted leave to include in the SAC, and which has not dismissed with prejudice. Further, Plaintiff is notified that if he fails to amend the dismissed claims within the prescribed time period, the referenced claims could be dismissed with prejudice under Federal Rule of Civil Procedure 41(b).

Dated:  November 30, 2011

GARLAND E. BURRELL, JR.
United States District Judge